UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREY LARSHIN,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>B. KIBLER,<br><br>　　　　　　Respondent. | No.  2:21-cv-00122-DJC-KJN P<br><br><br>FINDINGS & RECOMMENDATIONS |

I. Introduction

　　Petitioner Andrey Larshin is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2005 conviction for robbery, assault with a firearm, extortion, extortion by threat, and making criminal threats, with personal firearm enhancements.  Petitioner was sentenced to a determinate term of 29 years, four months in state prison.  Petitioner claims that:  (1) his sentence is unconstitutional; and (2) he received ineffective assistance of counsel.  After careful review of the record, this Court concludes that the petition should be denied.

II. Procedural History

　　On August 22, 2005, a jury found petitioner guilty of robbery, assault with a firearm, extortion, extortion by threat, and making criminal threats finding true personal firearm enhancements.  (ECF No. 29-1.)  On October 28, 2005, petitioner was sentenced to 29 years, four

1

months in state prison.  (Id.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District.  The Court of Appeal affirmed the conviction on December 29, 2006.  (ECF No. 29-2.)

Petitioner filed a petition for review in the California Supreme Court, and the court granted review and then remanded the case back to the state appellate court.  (ECF Nos. 29-3 & 29-4.)  The California Court of Appeal affirmed the judgments.  (ECF No. 29-5.)  Petitioner again petitioned the California Supreme Court for review, but it was denied.  (ECF Nos. 29-6 & 29-7.)  Petitioner filed two state habeas petitions, which were denied.  (ECF Nos. 29-8 to 29-11.)

On April 8, 2010, petitioner filed a federal habeas corpus petition challenging his 2005 conviction, alleging that the imposition of the upper term sentence for assault with a firearm and firearm enhancement violated his constitutional right to a jury trial.  Larshin v. Corcoran State Prison, No. 2:10-cv-0835 FCD GGH (E.D. Cal.); (ECF No. 29-17.)  The court denied the petition on the merits.  (ECF Nos. 29-19 & 29-20.)

In April 2019, petitioner filed a state habeas petition in the California Supreme Court, and the court denied the petition.  (ECF Nos. 29-15 & 29-16.)

On October 9, 2020, the state superior court corrected petitioner's judgment to include five additional days of presentence custody credits, and entered the order *nunc pro tunc* to October 28, 2005, petitioner's original sentencing date.  (ECF No. 29-1 at 1-2.)

On January 13, 2021, petitioner filed a habeas petition.  (ECF No. 1.)  Petitioner filed an amended petition on February 19, 2021.  (ECF No. 6.)  Respondent moved to dismiss.  (ECF No. 15.)  On October 12, 2021, the court granted petitioner thirty days leave to file a motion to amend, accompanied by a second amended petition, as well as a motion for stay or request to abandon unexhausted claim three.  Petitioner was informed of his options for seeking stays if he intended to pursue his state court remedies for any unexhausted claim and cautioned that failure to file such motion would result in the claim being dismissed as unexhausted. (ECF No. 23.)

Petitioner did not file a motion for stay, but rather filed a motion to amend and a second amended petition.  (ECF Nos. 24 & 26.)  The court granted the motion to amend and dismissed without prejudice respondent's motion to dismiss, and petitioner filed his second amended

petition on December 1, 2021.  (ECF Nos. 26 & 27.)  In his second amended petition, petitioner raises the following four claims:  (1) excessive sentencing; (2) ineffective assistance of counsel; (3) the trial court exceeded its jurisdiction; and (4) violation of due process by denying petitioner a hearing.  (ECF No. 26.)

On January 20, 2022, respondent filed a motion to dismiss, arguing that the petition is barred by the statute of limitations, that claims three and four are unexhausted because petitioner did not present them to the California Supreme Court, and in the alternative, claims one, three and four are not cognizable.  (ECF No. 28.)  Petitioner did not file an opposition.  On February 25, 2022, petitioner was ordered to show cause why his failure to oppose the motion should not be deemed a waiver of any opposition to the granting of the motion and directed petitioner to file an opposition.  Petitioner was cautioned that failure to respond to the order to show cause, or to oppose the motion to dismiss, would result in a recommendation that this action be dismissed.

On April 1, 2022, petitioner filed a response to the order to show cause.  Petitioner did not file an opposition to the motion to dismiss, but rather stated that he "refuse[s] to have [his] case dismissed," and "stand[s] on the truth of [his] writ of habeas corpus and have the judge hear [the] case."  (ECF No. 31 at 1.)  This court recommended that claims three, four, and the portion of claim one based on California Senate Bill 620 be dismissed and directed respondent to answer the portion of claim one regarding how his sentence violates Apprendi and Cunningham, and claim two alleging ineffective assistance of counsel.  (ECF No. 33.)

Respondent filed an answer to the second amended petition.  (ECF No. 36.)  Petitioner did not file a traverse.

III.  Facts[1]

After independently reviewing the record, this court finds the appellate court's summary accurate and adopts it herein.  In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on remand, the California Court of Appeal for the Third Appellate

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Shchirskiy, No. C050796, 2008 WL4809194, at *1-3 (Cal. Ct. App. Nov. 5, 2008), a copy of which respondent lodged as ECF No. 29-5.

District provided the following factual summary:

> Although Larshin was convicted on numerous counts, his appellate contentions are limited, and we therefore need not recite the details of all counts.
>
> Larshin was charged with 15 counts of robbery (§ 211), attempted extortion[4] (§ 524), criminal threats (§ 422), and assault with a semiautomatic firearm (§ 245, subd. (b)), as to various victims on various dates in 2003 and 2004, plus enhancements for personal use of a firearm (§§ 12022.5, subd. (a)(1), 12022.53, subd. (b)). Count Eleven was dismissed by the court. The jury found Larshin not guilty on Count One (attempted extortion of Peter Konishchuk) and not guilty on Count Nine (attempted robbery of Yaroslav Tseyk). The jury found Larshin guilty on the other 12 counts[5] and found true that Larshin personally used a firearm for Counts Three through Eight within the meaning of sections 12022.5, subdivision (a)(1), and 12022.53, subdivision (b).
>
> [N.4 Section 524, fn. 3, *ante*, makes attempted extortion punishable in the same manner as if the defendant had actually obtained the money or property from the victim.]
>
> [N.5 The jury found Larshin guilty of criminal threat against Peter Konishchuk on March 29, 2004 (Count Two); robbery, criminal threat, assault with a firearm, extortion, attempted extortion, and attempted robbery as against victim Yaroslav Tseyk on various dates in 2003 and 2004 (Counts Three through Eight, Ten and Twelve [Count Eleven was dismissed] ); attempted extortion and dissuading a witness from testifying, as to victim Konstantin Brutskiy in April 2004 (Counts Thirteen and Fourteen); and criminal intent against Stephanie Johnson in August 2002 (Count Fifteen).]
>
> Shchirskiy was charged with two counts (Counts One and Thirteen), for attempted extortion by threat. The jury acquitted Shchirskiy on Count Thirteen and found him guilty on Count One-attempted extortion by threat against victim Peter Konishchuk.
>
> The appellate contentions relate to Counts One, Two and Three.
>
> ***Count One (Shchirskiy's Attempted Extortion)***
>
> Shchirskiy complains the trial court ordered him to pay restitution unrelated to the sole crime of which he was convicted-Count One, attempted extortion of Konishchuk. The evidence adduced regarding Count One included the following:
>
> One day in March 2004, Konishchuk was in his automotive body shop, making repairs to a customer's Mercedes Benz, when a group of persons including defendants drove up in a Jeep and inquired about having Konishchuk repair a Jaguar assertedly owned by Shchirskiy. Three days later, Konishchuk arrived at work to find the entrance open and the Mercedes gone. He reported the theft to the police. He then received telephone calls from Shchirskiy, demanding $10,000 for the return of the Mercedes. Konishchuk said he would

try to get the money. He reported the telephone calls to the police. Detective Prokopchuk had Konsihchuk participate in several tape-recorded telephone calls on March 24 and 25, 2004 (played for the jury, with translation provided), in which Shchirskiy repeated his demands for money. Konishchuk said he had $8,000 and was trying to get the other $2,000 but wanted to see the car before turning over the money. Shchirskiy refused, became upset, and threatened to burn the car. Konishchuk eventually said he would not pay. He later learned that the police found the Mercedes "burned down" on March 23, 2004 (before the recorded phone conversations).

After the jury found Shchirskiy guilty of attempted extortion in Count One (victim Konishchuk), the trial court sentenced him to two years in prison and ordered him to pay $1,500 restitution for an amount extorted from the car owner (a crime for which Shchirskiy was not charged, as we discuss *post* ).

***Count Two (Larshin's Criminal Threat Against Konishchuk)***

The day after the monitored phone calls, Larshin telephoned Konishchuk, said his (Larshin's) home had been raided by the police, and he (Larshin) would "make [Konishchuk] a hole in the head" if Konishchuk did not get Larshin's name removed from the police's list of suspects for the theft of the Mercedes. Larshin also told Konishchuk to leave town or he would "have no life here anyway." Konishchuk became "a little bit scared" and believed defendant was serious and could carry out the threat.

Larshin testified he did not threaten Konishchuk. He merely called to ask Konishchuk to remove Larshin from the suspect list because he had nothing to do with the theft.

***Counts Three Through Six (Larshin's Offenses Against Yaroslav Tseyk )***

Tseyk testified he was initially friendly with Larshin. Larshin once commented on the amount of cash carried by Tseyk (who worked as an airline baggage checker). While they were still friendly, Larshin showed Tseyk a loaded semiautomatic gun and said he carried it all the time. On other occasions thereafter, Tseyk saw Larshin with the gun in his waistband or putting the gun in the glove compartment.

Tseyk testified that one day in 2003 (he did not remember the date), Larshin called and asked Tseyk to meet him at an apartment complex near Norwood and Interstate 80. When Tseyk arrived, Larshin and several other persons, all armed with guns, approached Tseyk's car. Larshin asked for $1,000 for "protection." Tseyk said no. Larshin, with his gun in his hand, told Tseyk to pay the money or he would "end up in the American river flowing [*sic* ] down the water." Larshin placed the point of his gun touching the side of Tseyk's head. Tseyk was afraid and agreed to pay the money. Larshin told him to bring the money the next day. Tseyk agreed to do so. The next day, Larshin called Tseyk in the morning, and Tseyk brought him $1,000 in cash. When asked why he gave Larshin the money, Tseyk said, "So, he would leave me alone." Larshin's companions were not with

5

>him when he got the money.
>
>This scenario of Larshin obtaining money by threatening Tseyk was repeated on later occasions, which were the subject of other counts not at issue in this appeal.
>
>Larshin testified he met Tseyk at the apartment complex but had no gun, did not threaten Tseyk, and did not receive $1,000 from Tseyk. Larshin said Tseyk asked for help in buying a gun because another man (Oleg) threatened him with a knife. Larshin went to Oleg to intervene, but Oleg said Tseyk was lying, and Tseyk owed money for a ticket he got when he borrowed Oleg's car. Larshin drove back to the apartment complex, angry that Tseyk had tried to use him to get out of paying money he owed to Oleg. Larshin hit Tseyk and took $92 cash that was inside the wallet that fell out of Tseyk's pocket.
>
>After the jury returned its verdicts, the trial court sentenced Larshin to a total of 29 years and four months-the upper term of nine years on the Count Five assault with a firearm; one year on Count Seven extortion; one year on Count Eight extortion; three years on Count Fourteen dissuading a witness in violation of section 136.1; eight months each on Counts Two, Ten, Thirteen, and Fifteen extortion and criminal threats; 10 years for the section 12022.5, subdivision (a)(1), gun enhancement attached to the Count Five assault with a firearm; and one year, four months for the gun enhancements attached to Counts Seven and Eight.
>
>Sentences on the remaining counts (Counts Three, Four, Six and Twelve) were stayed under section 654.

(ECF No. 29-5 at 2-7.)

IV. <u>Standards for a Writ of Habeas Corpus</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Wilson v. Corcoran</u>, 562 U.S. 1, 5 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

6

>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue. See Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[2]

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

7

Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); see also Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous"'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Id. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a

---

presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court reviews the state court record to "determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 101. It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's

claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860 (citing Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

V. Petitioner's Claims

    A. Claim One: Excessive Sentence

Petitioner claims that the trial court imposed an excessive sentence in violation of Cunningham v. California, 549 U.S. 270 (2007), and Apprendi v. New Jersey, 530 U.S. 466 (2000). (ECF No. 26 at 5, 17-19.) In response, respondent argues that the state court did not unreasonably apply clearly established Supreme Court precedent in holding that the trial court's imposition of an upper term sentence did not violate petitioner's right to a jury trial. (ECF No. 36 at 16-23.)

In the last well-reasoned opinion, the state appellate court considered and rejected the claim on direct appeal:

> The trial court imposed the upper term on Count Five (assault with a firearm) and the upper term on the attached section 12022.5 enhancement because (1) the crimes involved great violence and threat of great bodily harm or acts disclosing a high degree of cruelty, viciousness or callousness; (2) the victims were particularly vulnerable because English was their second language, they were new to this country and had a general distrust of law enforcement; (3) Larshin induced others to participate in the crimes and threatened witnesses; (4) the crimes involved planning and some degree of sophistication; (5) Larshin's prior performance on probation was unsatisfactory; and (6) there were no circumstances in mitigation.
>
> Larshin contends the imposition of the upper term sentence violated *Blakely v. Washington* (2004) 542 U.S. 296, and the federal constitutional rights to a jury trial (6th Amendment) and due process (14th Amendment). He argues we should consider this contention despite his failure to raise it in the trial court. He acknowledges his claim of sentencing error fails under *People v. Black* (2005) 35 Cal.4th 1238 (which was published before Larshin's sentencing hearing) but says he makes the argument here in order to preserve it for federal court review. Since the Attorney General does not urge forfeiture, we shall not consider the contention forfeited.
>
> Applying the 6th Amendment to the United States Constitution, the United States Supreme Court held in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] (*Apprendi*) that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be tried to a jury and proved beyond a reasonable doubt. (*Id.* at p. 490 [147 L.Ed.2d at p.

> 455].) For this purpose, the statutory maximum is the maximum sentence that a court could impose based solely on facts reflected by a jury's verdict or admitted by the defendant. Thus, when a sentencing court's authority to impose an enhanced sentence depends upon additional fact findings, there is a right to a jury trial and proof beyond a reasonable doubt on the additional facts. (*Blakely v. Washington* (2004) 542 U.S. 296, 303-306 [159 L.Ed.2d 403, 413-414] (*Blakely*).)
>
> The United States Supreme Court later emphasized: "If the [sentencing scheme] could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. [Citations.] ... For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." (*United States v. Booker* (2005) 543 U.S. 220, 233 [160 L.Ed.2d 621, 643] (*Booker*).)
>
> Citing *Apprendi* and *Blakely,* Larshin contends the upper term for Count Five (assault with a firearm) and the upper term of 10 years for the attached firearm enhancement must be reversed because the trial court relied on facts not submitted to the jury and proved beyond a reasonable doubt, thus depriving Larshin of the constitutional right to a jury trial on facts legally essential to the sentence.
>
> However, for reasons set forth in its recent opinion, the California Supreme Court has held "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence ... under California law" does "not violate a defendant's right to a jury trial under the principles set forth in *Apprendi, Blakely,* and *Booker.*" (*Black, supra,* 35 Cal.4th 1238, 1254.)
>
> We must follow the holding in *Black, supra,* 35 Cal.4th 1238, which is binding on us. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Accordingly, we reject Larshin's claim of sentencing error.

(ECF No. 29-2 at 17-20.) Petitioner filed a petition for review, which the California Supreme Court granted and remanded the case back to state appellate court. (ECF Nos. 29-4 & 29-5.) The state court again rejected his claim:

> Larshin contends the imposition of the upper terms, in reliance on facts not submitted to the jury and not proved beyond a reasonable doubt, violated *Blakely v. Washington* (2004) 542 U.S. 296, and the federal constitutional rights to a jury trial (6th Amendment) and due process (14th Amendment). He argues we should consider this contention despite his failure to raise it in the trial court. The Attorney General does not urge forfeiture, and we shall address the issue.

11

Although the court gave a variety of reasons for its decision, one aggravating circumstance will suffice to impose the upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 732.)

The California Supreme Court in the recent opinion of *People v. Towne* (2008) 44 Cal.4th 63, said "the federal constitutional right to a jury trial and proof beyond a reasonable doubt on aggravating circumstances does not extend to the circumstance that a defendant was on probation or parole at the time of the offense or has served a prior prison term." (*Id.* at pp. 76, 79, 80.) A defendant who committed another offense while on probation demonstrates he is less amenable to rehabilitation and, accordingly, more deserving of punishment. (*Id.* at p. 80.) "Whether the aggravating circumstance of a defendant's prior unsatisfactory performance on probation or parole comes within the *Almendarez-Torres*[7] exception [factor related to recidivism could be determined by reference to court records] ... will depend upon the evidence by which that circumstance is established in a particular case. In some instances, the defendant's unsatisfactory performance on probation or parole is proved by evidence demonstrating that, while previously on probation or parole, he committed and was convicted of new offenses.... When a defendant's prior unsatisfactory performance on probation or parole is established by his or her record of prior convictions, it seems beyond debate that the aggravating circumstance is included within the *Almendarez-Torres* exception and that the right to a jury trial does not apply. [¶] On the other hand, in some instances, a finding of unsatisfactory performance could be based upon other evidence of misconduct that was not previously adjudicated in a criminal trial. For example, a presentence report might allege that the defendant did not appear for appointments, failed a drug test, or stopped attending counseling sessions as directed. Such assertions may be based on information obtained from the probation officer or others and may be open to dispute." (*Towne, supra,* 44 Cal.4th at p. 82.) In circumstances where a finding of poor performance on probation can be established only by facts other than the defendant's prior convictions, the right to a jury trial applies. (*Ibid.*)

[N.7 *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [140 L.Ed.2d 350].]

Here, the record shows Larshin committed two criminal offenses (not the current offenses) while on probation. Thus, the probation report shows that, in June 1997, Larshin was convicted of possession of stolen property (§ 496) and was placed on three years informal probation. Within that three-year period, in November 1998, he committed the offense of possession of stolen property, for which he was convicted and placed on three years informal probation. In March 1999, while on probation, he committed vehicle burglary (§ 459), for which he was convicted.

Thus, defendant was not entitled to a jury trial on the matter of unsatisfactory performance on probation, and his unsatisfactory performance on probation supports the sentence.

12

(ECF No. 29-5 at 18-21.)  Petitioner also raised this claim in an earlier federal habeas corpus petition challenging his 2005 conviction, alleging the imposition of the upper term sentence for assault with a firearm and the firearm enhancement violated his constitutional right to a jury trial. (ECF No. 29-17.)  The court denied the petition on the merits:

> Here, the trial court's Rule (B)(5) finding of unsatisfactory performance on probation was based on the fact that petitioner committed two additional crimes while on probation, as reflected in his probation report. Petitioner does not dispute that he committed these offenses; indeed, the criminal history in the probation report appears to be partially based on his own statements. Whether or not the probation officer received additional information as to these crimes, the mere fact that they occurred indicates recidivism, which the Ninth Circuit has held to be excluded from Apprendi. *Martin*, *supra*, 278 F.3d at 1006. That these prior offenses were misdemeanors does not appreciably change the constitutional analysis under AEDPA. Recent lower court decisions have found that a defendant's prior convictions as reflected on his probation report may be reasonably interpreted to fall within the "prior conviction" exception. *E.g.*, *Clemens v. MacDonald*, No. 2:08-cv-2588 KJN P, 2011 WL 1260047 at *24 (E.D. Cal. March 30, 2011); *Jordan v. Neotti*, No. cv-09-6874 ODW(E), 2011 WL 1532059 at *10 (C.D. Cal. March 10, 2011); *see also Towne*, *supra*, 44 Cal. 4th at 82 ("When a defendant's prior unsatisfactory performance on probation or parole is established by his or her record of prior convictions, it seems beyond debate that the aggravating circumstance is included within the *Almendarez-Torres* exception and that the right to a jury does not apply.")

(ECF Nos. 29-19 at 14-15; see also ECF No. 29-20.)

The Supreme Court has held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi v. New Jersey, 530 U.S. 466, 490 (2000); see also Cunningham v. California, 549 U.S. 270 (2007) (holding that because California's determinate sentencing law "authorizes the judge, not the jury, to find facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent"); Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008).  The "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  Blakely v. Washington, 542 U.S. 296, 303 (2004) (emphasis omitted).

Here, the state court's rejection of petitioner's excessive sentencing claim was not

13

contrary to, or an unreasonable application of, clearly established Supreme Court authority. (ECF No. 29-5 at 21.) If at least one of the aggravating factors relied on by the sentencing judge is consistent with the Sixth Amendment, petitioner's conviction does not violate the Constitution. See Butler, 528 F.3d at 641 ("We agree that, under California law, only one aggravating factor is necessary to authorize an upper term sentence."); see also People v. Black, 41 Cal.4th 799, 812 (2007) ("[A]s long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence has been established in accordance with the requirements of *Apprendi* and its progeny, any additional fact finding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial."). Although the sentencing judge found many aggravating factors, one of them was petitioner's unsatisfactory "prior performance on probation" under Rule (B)(5). (ECF No. 40-6 at 96-100.) This seems to be based in part on the probation report, indicating that petitioner had two prior misdemeanor convictions for offenses committed while on probation. (ECF No. 40-2 at 276-77.) This aggravating factor is based on petitioner's history of recidivism. And "*Apprendi* expressly excludes recidivism from its scope." United States v. Martin, 278 F.3d 988, 1006 (9th Cir. 2002); see also United States v. Quintana-Quintana, 383 F.3d 1052, 1053 (9th Cir. 2004); United States v. Palafox-Barajas, 222 F. App'x 654, 654 (9th Cir. 2004) ("We have repeatedly acknowledged that *Apprendi* carves out an exception for the fact of a prior conviction."). Because petitioner's "criminal history need not be proved to a jury beyond a reasonable doubt," there was no constitutional error when the sentencing court imposed a sentence in part based on a prior conviction aggravating factor. Martin, 278 F.3d at 1006; see also United States v. Delaney, 427 F.3d 1224, 1226 (9th Cir. 2005) ("The Supreme Court has made clear that the fact of a prior conviction need not be proved to a jury beyond a reasonable doubt or admitted by the defendant to satisfy the Sixth Amendment."). Even if his probationary status does not come within a prior conviction exception, habeas relief is still not warranted for this claim. See Kessee v. Mendoza–Powers, 574 F.3d 675, 678-79 (9th Cir. 2009).

       B. Claim Two: Ineffective Assistance of Counsel

       Next, petitioner claims that he was denied effective assistance of counsel in violation of

14

his Sixth Amendment rights when his counsel failed to impeach Brutskiy with a prior burglary conviction. (ECF No. 26 at 7, 16-18.) In response, respondent argues that petitioner is not entitled to relief on this claim. (ECF No. 36 at 23-31.)

In reviewing petitioner's state habeas petition, the state court rejected the claim both on procedural ground and on the merits:

> Petitioner challenges his convictions on Counts 13 and 14 of the amended information, of extortion and intimidation of a witness, both committed against victim Konstantin Brutskiy. Specifically, he claims that trial counsel was ineffective in failing to impeach that victim, with evidence that the victim had been convicted of a burglary. Petitioner claims that the conviction had been rendered after an Evid. Code § 402 hearing in Case No. 04F03507 about whether evidence of that case, which at that time was still pending, could be admitted as impeachment, and that counsel was ineffective in not discovering that it had resulted in conviction and using it as impeachment at trial.
>
> The claim is barred by Robbins/Clark, and petitioner fails to show that it meets an exception to that bar.
>
> Nor would petitioner be able to show prejudice under the lesser reasonable probability standard, were the claim not barred by Robbins/Clark, as petitioner did impeach the victim with the victim's two petty thefts committed in 2002 and 2003. In light of the victim's two petty thefts, coupled with the strong evidence otherwise presented against petitioner on these counts and on similar crimes committed against other persons presented in the prosecution, it would not have been reasonably probable that the outcome would have been different had the jury also known that victim Brutskiy had also committed a burglary. As such, the claim would have failed in any event, had it not been barred by Robbins/Clark (In re Bower (1985) 38 Cal.3d 865).

(ECF No. 16-9 at 2.)

As a threshold matter, respondent argues that petitioner's claim is procedurally barred. Although procedural issues are often addressed before the merits, that is not mandatory. The Supreme Court in Lambrix v. Singletary, 520 U.S. 518 (1997), skipped over the procedural bar argument and proceeded to the merits. Id. at 525 ("Despite our puzzlement at the Court of Appeals' failure to resolve this case on the basis of procedural bar, we hesitate to resolve it on that basis ourselves."); see also Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (stating that courts may "reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural

15

bar."). "Procedural bar issues are not infrequently more complex than the merits issues" and "it may well make sense in some instances to proceed to the merits if the result will be the same." Franklin, 290 F.3d at 1232; see, e.g., Dickey v. Davis, 69 F.4th 624, 647 n.14 (9th Cir. 2023); Ayala v. Chappell, 829 F.3d 1081, 1095-96 (9th Cir. 2016). Because this claim can be resolved on the merits, this Court declines to decide whether a procedural bar precludes petitioner from obtaining habeas relief.

To state an ineffective assistance of counsel claim, a defendant must show that (1) his counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) his counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). For the deficiency prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (citation omitted). For the prejudice prong, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (internal citations omitted); see also Landrigan, 550 U.S. at 473. When § 2254(d) applies, the "question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." Richter, 562 U.S. at 105.

Petitioner claims that counsel was ineffective for failing to impeach victim Konstantin Brutskiy with prior conviction evidence. Before petitioner's trial, the trial court held an Evidence Code section 402 hearing and concluded that the pending criminal charges for burglary against Brutskiy were inadmissible as impeachment evidence. (ECF No. 29-10 at 29-44.) Two weeks before Brutskiy testified at petitioner's trial, however, he was convicted of burglary, resolving the pending criminal case that was the subject of the 402 hearing. (ECF No. 16-8 at 18.) Petitioner claims that Brutskiy's burglary conviction could have been used as impeachment evidence, and

his counsel was constitutionally ineffective when he failed to do so.  On state habeas review, the state court determined that the evidence was barred under California law and, even if it were not, petitioner could not show prejudice from the alleged error. (ECF No. 16-9 at 2 ("In light of the victim's two petty thefts, coupled with the strong evidence otherwise presented against petitioner on these counts and on similar crimes committed against other persons presented in the prosecution, it would not have been reasonably probable that the outcome would have been different had the jury also known that victim Brutskiy had also committed a burglary."))

After reviewing the record, this Court concludes that the state court's rejection of petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.  The jury was made aware that Brutskiy had been previously convicted when he was impeached with two prior petty theft convictions from 2002 and 2003.  (ECF No. 40-4 at 178-79, 187.)  Because Brutskiy's credibility was already undermined, it was not objectively unreasonable for the state court to conclude that failing to impeach him with another prior conviction was not prejudicial.  See, e.g., Horton v. Mayle, 408 F.3d 570, 577 (9th Cir. 2016) ("In short, [petitioner's] credibility was so undermined anyway that evidence that he also had a conviction for possession with intent to sell PCP would not have affected the outcome."); Woods v. Sinclair, 764 F.3d 1109, 1135 (9th Cir. 2014) ("While we agree that a drug conviction may not be as valuable for impeachment purposes as a theft conviction, we cannot say that the counsel's failure to elicit Knight's admission to a theft conviction was sufficiently prejudicial to render the state supreme court's determination objectively unreasonable.").  This Court recommends denying habeas relief on petitioner's ineffective assistance of counsel claim.

Petitioner also seems to argue that his appellate counsel provided ineffective assistance of counsel by "failing to research all issues." (ECF No. 26 at 7, 16-17.)  Because petitioner provides no specific facts or legal authority to support his conclusory allegation, habeas relief is not warranted for this claim either.  See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

## VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why, and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 10, 2023

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

TAA/lars0122. 157